# IN THE SUPREME COURT OF IOWA

No. 12–2176

Filed November 15, 2013

**STATE OF IOWA,**

    Appellant,

vs.

**DAVID R. DESIMONE,**

    Appellee.

---

Appeal from the Iowa District Court for Clinton County, Marlita A. Greve, Judge.

The State of Iowa appeals from an order finding that an individual was a wrongfully imprisoned person. **REVERSED AND REMANDED.**

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Deputy Attorney General, and Meghan L. Gavin and William A. Hill, Assistant Attorneys General, for appellant.

Michael J. McCarthy of McCarthy, Lammers & Hines, Davenport, for appellee.

**MANSFIELD, Justice.**

This case presents several substantive and procedural issues under Iowa Code section 663A.1 (2011), our state's "wrongful imprisonment" law. In 2005, David DeSimone was tried before a jury on a charge of third-degree sexual abuse, found guilty, and sentenced to prison. Six years later, this court granted postconviction relief and overturned DeSimone's conviction and sentence, necessitating a new trial. *See DeSimone v. State*, 803 N.W.2d 97, 106 (Iowa 2011). The second trial resulted in DeSimone's acquittal.

Subsequently, DeSimone filed an application to be declared a wrongfully imprisoned individual under section 663A.1. The district court granted DeSimone's application, finding he had proved by clear and convincing evidence that he had not committed third-degree sexual abuse or any lesser included offense. *See* Iowa Code § 663A.1(2)(*a*) (2011).

The State now appeals the district court's ruling. First, it argues DeSimone's acquittal could not form the basis for a wrongful imprisonment claim because it was not "an order vacating, dismissing, or reversing the conviction and sentence in a case for which no further proceedings can be or will be held against an individual." *Id.* 663A.1(2). Second, the State argues the district court should have considered the testimony that had been presented at DeSimone's two criminal trials in making the wrongful imprisonment determination. Third, the State contends that even without the prior testimony, substantial evidence does not support the district court's finding that DeSimone was innocent.

We hold: (1) DeSimone was eligible to bring a wrongful imprisonment claim when he was acquitted on retrial following our order vacating his conviction; (2) the district court erred in not considering the

prior criminal case testimony even though the State did not show the witnesses were no longer available; (3) substantial evidence supports the district court's finding of innocence on the existing record, so a remand is necessary for the district court to consider the full record, including the prior testimony. For these reasons, we reverse the district court's order and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural Background.

This case began with a party that DeSimone, then forty-five years old, hosted in October 2004. DeSimone lived in the upstairs apartment of a house owned by his uncle. One of the persons attending the party was Samantha, a seventeen-year-old. Based on testimony and exhibits presented at the first trial, the court of appeals set forth the facts as follows:

> Defendant had been given money by others to purchase a keg of beer for the party. Samantha drank six to twelve glasses of beer and admitted blacking out or passing out twice. Following the second episode, Samantha found herself naked in defendant's bed. She noticed her tampon was missing. She said the defendant forced her to engage in sexual intercourse and fellatio. She left defendant's house after midnight, went to a nearby store, and called a friend and the police.
>
> After talking briefly with Samantha, the police took her to the hospital, where she was examined for sexual assault. She told police she had vomited on the defendant's bed, the bedroom floor, and her hair. She also said the defendant had grabbed her neck and choked her. The hospital examination did not find any evidence of trauma to her neck or genital area. The laboratory examination of the sexual abuse protocol kit returned no evidence of semen.
>
> The police obtained a search warrant and seized bedding from the defendant's home. The laboratory examination of the items seized from the defendant's home found evidence of the defendant's blood and dried semen. The tests did not reveal any blood, vomit, or other biological materials attributable to Samantha on the items seized.

*See State v. DeSimone,* No. 05–1740, 2007 WL 750649, at *1 (Iowa Ct. App. 2007).

Notwithstanding a paucity of physical evidence to support the State's case, the jury at the first trial in 2005 found DeSimone guilty of third-degree sexual abuse. *See* Iowa Code § 709.4 (2003) (defining sexual abuse in the third degree). Samantha testified that DeSimone told her he was not going to ejaculate on her, so as not to leave any physical evidence. In addition, an eyewitness, Joe Baker, testified he had seen DeSimone and Samantha together in DeSimone's bedroom, with Samantha asleep—although clothed—on DeSimone's bed. Following DeSimone's conviction, the district court sentenced him to a term of incarceration not to exceed fifteen years. The court of appeals affirmed his conviction and sentence in 2007. *See DeSimone*, 2007 WL 750649, at *3.

Thereafter, DeSimone filed an application for postconviction relief. The application asserted, among other things, that the State had committed a *Brady* violation.[1] At the first trial, a high school senior who later became a friend of Samantha testified. She claimed that on the night of the alleged assault she saw a girl, presumably Samantha, run across the street in a direction heading away from DeSimone's house at the very time Samantha said she had fled. However, it turned out the time records for this witness's employer indicated she was still at work at that time. DeSimone alleged the State's failure to disclose the

---

[1]In *Brady v. Maryland*, the United States Supreme Court held that due process requires the prosecution to disclose exculpatory evidence to the accused. 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97, 10 L. Ed. 2d 215, 218 (1963). To establish a *Brady* violation, the defendant must prove "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt." *DeSimone*, 803 N.W.2d at 103 (citation and internal quotation marks omitted).

exculpatory information it had received from the witness's employer violated due process and required a new trial.

The district court and the court of appeals rejected DeSimone's contentions, but in 2011, on further review, we found that a *Brady* violation had occurred. *See DeSimone*, 803 N.W.2d at 106. We vacated DeSimone's conviction and sentence, and ordered a new trial. *Id.*

The second trial took place from March 26 through 29, 2012. Although DeSimone did not take the stand in his original trial, he testified during his second criminal trial. At the conclusion of this trial, the jury found him not guilty of all charges.

Following his acquittal, on April 3, DeSimone filed an application to be determined a wrongfully imprisoned person under Iowa Code section 663A.1. A hearing took place in district court on November 13. Prior to the hearing, DeSimone had served a series of requests for admissions on the State, attempting to get the State to admit certain facts elicited at the first trial that were favorable to him.[2] In response, the State, "subject to any further testimony in the transcript," admitted the following: (1) the law enforcement officer who responded to Samantha's 911 call from the grocery store found no evidence of vomit on Samantha or at DeSimone's home; (2) the officer observed no "visible signs of injury on Samantha" and Samantha did not complain to him of any injuries caused by DeSimone; (3) Samantha was intoxicated when the officer questioned her; (4) an investigating officer from the Clinton Police Department found "no evidence of manipulation of physical objects by anyone and . . . no evidence of anyone trying to hide evidence" at

---

[2]A transcript had been prepared of the testimony given at the first trial, but not of the testimony given at the second trial, which resulted in an acquittal.

DeSimone's home; (5) a Division of Criminal Investigation criminalist found no blood, vomit, or DNA on the samples he analyzed, except for a small amount of blood inside the knee of Samantha's jeans—Samantha was menstruating at the time of the alleged assault; (6) the criminalist found no sperm on a vaginal swab of Samantha; (7) the nurse who performed the rape protocol on Samantha shortly after she made the allegation against DeSimone observed no physical injuries of any kind; (8) Samantha did not claim she had been raped during her 911 call from the grocery store; (9) the physician in the emergency room found no evidence of physical injury or sexual assault when he examined Samantha; and (10) in the emergency room, Samantha did not claim she had passed out, blacked out, or become delusional on the night of the party.

DeSimone put these admissions into evidence at the wrongful imprisonment hearing. In addition, he was the only witness to testify at the hearing. In his testimony, DeSimone stated he had brought a keg of beer to the October 2004 party and knew the guests, including the underage guests, were consuming alcohol throughout the night. DeSimone testified he drank whiskey during the party but was not drunk.

DeSimone testified that Samantha became very intoxicated during the party. Around 9:00 p.m., according to DeSimone's account, he saw her in the hallway and believed she was going to vomit. He took her to the downstairs bathroom after he realized the upstairs bathroom was occupied by several other guests. While Samantha was in the downstairs bathroom, DeSimone waited in the downstairs kitchen. After DeSimone went back upstairs, an altercation occurred, after which DeSimone told all of the guests he wanted them to leave.

DeSimone testified that after he asked everyone to leave, Samantha and a few others stayed behind and attempted to get the other guests to depart. According to DeSimone, Samantha then sat down, put her head on the upstairs kitchen table, and passed out. DeSimone testified he went downstairs for a while, and when he returned he saw Samantha and Joe Baker engaged in sexual activity in the kitchen. DeSimone said he went to bed at that time and did not see or hear anything until around six or seven the following morning when Baker woke him up and requested to use his cell phone. DeSimone testified he did not know where Samantha was at that time and did not know when or how Samantha left the apartment. He denied ever engaging in sexual activity with her.

The State did not present any new evidence at the wrongful imprisonment hearing. Instead, it simply asked the district court to take judicial notice of the prior criminal case file. DeSimone, however, objected to the State's request to the extent it included the trial transcripts. DeSimone argued this prior testimony could be received only if the witnesses were unavailable, something the State had not demonstrated. *See* Iowa R. Evid. 5.804(*b*)(1) (describing the hearsay exception for former testimony when the declarant is unavailable).

On November 21, 2012, the district court entered a detailed order finding DeSimone was a wrongfully imprisoned person under section 663A.1. The court reasoned as follows. First, the court accepted DeSimone's position that the prior criminal trial transcripts could not be considered because the State had failed to show the witnesses were unavailable. Second, the court concluded that DeSimone met the criteria set forth in Iowa Code section 663A.1(1) for wrongful imprisonment, because his conviction had been vacated and his acquittal on retrial

meant that "no further proceedings can be or will be held." *See* Iowa Code § 663A.1(1)(*e*). Third, the court concluded that DeSimone also met the criteria set forth in section 663A.1(2) for wrongful imprisonment because he had shown by clear and convincing evidence that he was factually innocent. *See id.* § 663A.1(2). Relying on the State's admissions and DeSimone's in-person testimony, which the district court found credible, the district court concluded that DeSimone had not committed sexual assault or any lesser included crime. *See id.*

The State now appeals, challenging all three aspects of the district court's order. We retained the appeal.

## II.  Standard of Review.

We review a district court's ruling on an individual's application to establish he or she was a wrongfully imprisoned person for errors at law. *State v. McCoy*, 742 N.W.2d 593, 596 (Iowa 2007). The district court's findings of fact will be upheld if supported by substantial evidence. *Id.*

## III.  Legal Analysis.

**A. Can an Acquittal on Retrial Following the Reversal of a Conviction Form the Basis for a Wrongful Imprisonment Claim?** Under Iowa law, an individual may seek damages under the Iowa Tort Claims Act if he or she is found by the district court to be a "wrongfully imprisoned person." *See* Iowa Code ch. 663A; *McCoy*, 742 N.W.2d at 596. To be considered wrongfully imprisoned, the individual must first meet the following criteria:

> *a.* The individual was charged, by indictment or information, with the commission of a public offense classified as an aggravated misdemeanor or felony.

> *b.* The individual did not plead guilty to the public offense charged, or to any lesser included offense, but was convicted by the court or by a jury of an offense classified as an aggravated misdemeanor or felony.

> *c.* The individual was sentenced to incarceration for a term of imprisonment not to exceed two years if the offense was an aggravated misdemeanor or to an indeterminate term of years under chapter 902 if the offense was a felony, as a result of the conviction.

> *d.* The individual's conviction was vacated or dismissed, or was reversed, and no further proceedings can be or will be held against the individual on any facts and circumstances alleged in the proceedings which had resulted in the conviction.

> *e.* The individual was imprisoned solely on the basis of the conviction that was vacated, dismissed, or reversed and on which no further proceedings can be or will be had.

Iowa Code § 663A.1(1).

If the individual meets the criteria of section 663A.1(1), the court then makes the second determination: whether it can be shown by clear and convincing evidence that the individual did not commit the offense or a lesser included offense, *or* that the offense in question was not committed at all. *Id.* § 663A.1(2); *see McCoy*, 742 N.W.2d at 597 ("The second essential finding is the claimant did not commit the offense or the offense was not committed by any person."); *State v. Dohlman*, 725 N.W.2d 428, 431 (Iowa 2006) ("If [the criteria of section 663A.1(1)] are met, the court then proceeds to the second inquiry: whether that person meets the requirements of section 663A.1(2).").

An individual must satisfy both section 663A.1(1) and section 663A.1(2) to be deemed wrongfully imprisoned and to proceed with a claim under the Iowa Tort Claims Act. *See McCoy*, 742 N.W.2d at 597 ("The two separate findings reveal that the right to sue the state under the State Tort Claims Act as a 'wrongfully imprisoned person' not only requires the person qualify as a 'wrongfully imprisoned person,' but also requires the person be a 'wrongfully imprisoned person' who did not commit the offense or whose offense of conviction was not committed by

any person."); *Dohlman,* 725 N.W.2d at 431 ("If the criteria of both section 663A.1(1) and section 663A.1(2) are met, the individual qualifies as a wrongfully imprisoned person.").

The State's initial argument on appeal is that a wrongful imprisonment claim cannot be brought following a not-guilty jury verdict. The State focuses on the beginning of section 663A.1(2), which provides:

> Upon receipt of an order vacating, dismissing, or reversing the conviction and sentence in a case for which no further proceedings can be or will be held against an individual on any facts and circumstances alleged in the proceedings which resulted in the conviction, the district court shall make a determination whether there is clear and convincing evidence to establish either of the following findings . . . .

Iowa Code § 663A.1(2). Based on this language, the State argues the order vacating the conviction must *also* result in the termination of the proceedings. According to the State, if a retrial later takes place, then the order vacating the conviction did not occur "in a case for which no further proceedings can be or will be held." *Id.*

We disagree with the State. To begin with, statutes must be read in their entirety. *Hardin County Drainage Dist. 55, Div. 3, Lateral 10 v. Union Pacific R.R.,* 826 N.W.2d 507, 512 (Iowa 2013) (stating that the court "examine[s] statutory language holistically"); *Mall Real Estate, L.L.C. v. City of Hamburg,* 818 N.W.2d 190, 198 (Iowa 2012) ("[W]e do not place undue importance on any single or isolated portion, but instead consider all parts of an enactment together."); *State v. Adams,* 810 N.W.2d 365, 369 (Iowa 2012) ("[W]e must construe the statute in its entirety."). We determine whether a statute is ambiguous or unambiguous by reading the statute as a whole. *See Mall Real Estate,* 828 N.W.2d at 198 ("Ambiguity may arise from specific language used in a statute or when the provision at issue is considered in the context of

the entire statute or related statutes." (Citation omitted.)); *State v. Hutton*, 796 N.W.2d 898, 904 (Iowa 2011) ("Ambiguity may arise either from the meaning of particular words or from the general scope and meaning of a statute when all its provisions are examined." (Citation and internal quotation marks omitted.)).

In this case, the operative language actually appears earlier. Section 663A.1(1)(*d*) requires that "[t]he individual's conviction was vacated or dismissed, or was reversed, and no further proceedings can be or will be held against the individual on any facts and circumstances alleged in the proceedings which had resulted in the conviction." Iowa Code § 663A.1(1)(*d*). This wording does not indicate that the two required developments—(1) reversal of the conviction and (2) an end to further proceedings against the individual—must occur simultaneously or in direct sequence. Both events simply have to have occurred.

Turning to section 663A.1(2), it appears in context to be simply an attempt to paraphrase section 663A.1(1)(*d*) and state what the district court must have in hand before it makes the second determination as to whether the individual is actually innocent. Thus, the district court must have received "an order vacating, dismissing, or reversing the conviction and sentence" and this must be "in a case for which no further proceedings can be or will be held." *Id.* § 663A.1(2). But again, the statute does not specifically require that no proceedings occurred after the order, just that the order was "in a case" where there can be or will be no further proceedings.

True, the phrase "[u]pon receipt" might suggest that the order vacating the conviction has to have been the final act, but even the State does not argue for that interpretation. If the order had to be the last thing to occur, then a wrongful imprisonment cause of action would not

be available in a case like *McCoy*, where our decision reversing the defendant's conviction did not end matters until the county attorney later decided not to bring the defendant to trial again. *See* 742 N.W.2d at 595. In short, we believe section 663A.1(2), read with section 663A.1(1)(*d*), is ambiguous and allows for the possibility that some proceedings—e.g., an unsuccessful retrial—can occur between the order vacating the original conviction and the ultimate determination that no further proceedings can or will be held. Under that construction, the use of "in" communicates that the order to vacate, dismiss, or reverse the conviction must be within the same case in which no proceedings can or will be held; it does not indicate those related elements must come into existence simultaneously or in direct sequence.

Given an ambiguous statute, we now revert to additional principles of statutory interpretation, namely that statutes are to be read so they make sense and achieve the legislature's purposes. *See State v. McCullah*, 787 N.W.2d 90, 94 (Iowa 2010) ("We strive for a reasonable interpretation that best achieves the statute's purpose and avoids absurd results." (Citation and internal quotation marks omitted.)).

The State's construction would lead to an odd result. The defendant's potential status as a wrongfully imprisoned person would depend entirely on whether *the State* elected to retry the defendant following the reversal of his or her original conviction—unless insufficient evidence were the basis for the reversal. It is not logical that the individual's eligibility for relief under section 663A.1 should turn on a decision completely in the State's control. Indeed, if the State's interpretation of section 663A.1 were correct, the State might have an incentive to retry even weak cases (and to put alleged victims like

Samantha through an additional trial) just to avoid the possibility of wrongful imprisonment liability.

Moreover, we have previously noted that our wrongful imprisonment statute is "a response to the mounting evidence of innocent persons who have been wrongfully convicted and imprisoned in this country." *McCoy*, 742 N.W.2d at 596. It is difficult to see how a person's imprisonment becomes any *less* wrongful—assuming the individual can prove actual innocence by clear and convincing evidence— just because the State attempted unsuccessfully to retry him or her instead of dropping the charges. In other words, the State's interpretation of section 663A.1 in no way advances the underlying purposes of the statute.

We also believe the legislative history is relevant. Originally, as passed by our House of Representatives, the legislation would have required *the court vacating the conviction* to have made one of two findings as part of its order: either "[t]hat the offense for which the individual was convicted and sentenced, including any lesser-included offenses, was not committed by the individual," or "[t]hat the offense for which the individual was convicted and sentenced was not committed by any person, including the individual." *See* H.F. 674, 77th G.A., Reg. Sess. (Iowa 1997) (passed March 31, 1997). The House Judiciary Committee official explanation states that this would have limited relief to the circumstances where the conviction was reversed "either because the offense was committed by another person or the offense was a fabrication." *See id.* Explanation; *see also Dohlman*, 725 N.W.2d at 432 (quoting this language). Clearly, this wording would have precluded the wrongful imprisonment cause of action from being pursued in a case such as *McCoy*—where the conviction was reversed because a confession

was improperly admitted—or here—where the conviction was reversed because of a *Brady* violation.

The House version of the bill, however, was amended in the Senate to reflect its current form. *See* S. Amendment 3570, 77th G.A., Reg. Sess. (Iowa 1997). The amendment eliminated the requirement that the court vacating the conviction had to find actual innocence. *Id.* Instead, it provided that if the individual passed the initial hurdle in section 663A.1(1), the district court would then need to make a subsequent determination of innocence by clear and convincing evidence. *Id.* The House later approved the amended version, and the Governor signed it. *See* H. Amendment 1913, 77th G.A., Reg. Sess. (Iowa 1997); 1997 Iowa Acts ch. 196, § 1 (codified at Iowa Code § 663A.1 (Supp. 1997)). Thus, the amended, final form of the law allows for the conviction to have been vacated on the basis of something other than actual innocence, such as the grounds in *McCoy* and the present case.

Of course, under the original House version, as soon as the conviction had been vacated on the basis of the defendant's innocence, it would be clear no further proceedings could go forward against that defendant. Thus, it is not surprising that the statute, reflecting its origins, reads somewhat as if it contemplates no subsequent events in the criminal case after the "order vacating, dismissing, or reversing the conviction and sentence." *See* Iowa Code § 663A.1(2) (2011). But once the Senate eliminated the requirement that the conviction had to have been vacated on the basis of innocence, it is logical to read the statute as allowing for developments in the criminal case after the conviction was reversed. Unless the criminal conviction was reversed on the basis of insufficient evidence, the case will almost always continue, at least temporarily. *See McCoy*, 742 N.W.2d at 595 (noting that proceedings

continued after the defendant's conviction was vacated due to an improperly admitted confession until the county attorney moved to dismiss the charges in the interest of justice); *Cox v. State*, 686 N.W.2d 209, 211 (Iowa 2004) (noting that even after the complaining witness recanted and the defendant's conviction was vacated, a new trial was ordered and the proceedings did not terminate until the state dismissed the charges).  Yet the State's interest in not having to pay compensation to someone who actually committed a crime is protected by the added requirement that the district court make an innocence determination by clear and convincing evidence.

Our reading of Iowa's statute is consistent with the stance taken by other jurisdictions that have similarly structured wrongful imprisonment laws.  In addition to Iowa, the federal government, twenty-eight states, and the District of Columbia have enacted legislation to provide compensation for wrongfully imprisoned persons.  *State Compensation Laws*, The Innocence Project, http://www.innocence project.org/news/LawView1.php (last visited Nov. 6, 2013) (listing all states with wrongful imprisonment compensation statutes).  While some jurisdictions have more restrictive laws that, for example, require a governor's pardon,[3] seventeen jurisdictions have statutes organized like ours.  That is, they require a conviction to have been reversed or vacated followed by a determination of actual innocence.  All but one have indicated by statute or caselaw (at least implicitly) that an individual may

---

[3]*See, e.g.,* Me. Rev. Stat. Ann. tit. 14, § 8241(2)(C) (2003) (requiring a pardon and written finding from the governor); Md. Code Ann., State Fin. & Proc. § 10-501(b) (LexisNexis 2009) (requiring a pardon from the governor indicating the conviction was in error); Tenn. Code Ann. § 9-8-108(a)(7) (2012) (requiring exoneration from the governor indicating the individual did not commit the crime).

bring a claim after being acquitted on retrial.[4] This demonstrates at a minimum that our interpretation of Iowa's statute would not put our state outside the mainstream in this area.

For example, Ohio's wrongful imprisonment statute has parallels to Iowa's. It requires the following elements to be present:

> The individual's conviction was vacated, dismissed, or reversed on appeal, the prosecuting attorney in the case cannot or will not seek any further appeal of right or upon leave of court, and no criminal proceeding is pending, can be brought, or will be brought by any prosecuting attorney, city

---

[4]Twelve of these seventeen jurisdictions statutorily provide that an individual is allowed to bring a claim after acquittal on retrial. *See* 28 U.S.C. § 2513(a)(1) (2006); 2013 Cal. Legis. Serv. 94 (West); Colo. Rev. Stat. § 13-65-102(2)(a)(II) (2013); D.C. Code § 2-422(1) (LexisNexis 2012); 735 Ill. Comp. Stat. Ann. 5/2-702(c)(2) (West Supp. 2013); La. Rev. Stat. Ann. § 15:572.8(G)(2) (2012 & Supp. 2013); Mass. Gen. Laws Ann. ch. 258D, § 1(B)(ii) (West Supp. 2013); Miss. Code Ann. § 11-44-3(1)(c) (West 2013); Neb. Rev. Stat. Ann. § 29-4603(2) (LexisNexis 2009); N.Y. Ct. Cl. Act § 8-b(3)(b)(ii) (McKinney 1989 & Supp. 2013); 2013 Wash. Sess. Laws 1100, ch. 175, § 4(c)(ii); W. Va. Code Ann. § 14-2-13a(d)(1) (LexisNexis 2009).

Of the remaining five jurisdictions that (like Iowa) are silent on the matter, two of them have court decisions indicating such claims are appropriate. *See Walden v. State*, 547 N.E.2d 962, 967 (Ohio 1989); *Estate of Knight v. State*, A-2900-05T3, 2007 WL 837120 (N.J. Super. Ct. App. Div. Mar. 21, 2007) (stating that after release from custody, when the wrongful imprisonment claim accrues, "the [wrongful imprisonment] action could be stayed or placed on the inactive list pending the outcome of the retrial of the criminal case").

Two other jurisdictions have not decided the issue directly but have cases that leave the door open to the possibility of bringing a claim after an acquittal on retrial. *See Wilhoit v. State*, 226 P.3d 682, 686 (Okla. 2009) (allowing a claimant who was successful in a retrial prior to the effective date of the wrongful imprisonment statute to pursue a claim under the statute despite not first obtaining a factual innocence determination from the trial court); *Miller v. State*, 226 P.3d 743, 749 (Utah Ct. App. 2010) (discussing a determination of factual innocence can be sought by a person who has already received postconviction relief as long as he has no *pending* retrial or appeal).

One jurisdiction with a similar statutory scheme appears to disallow claims following an acquittal on retrial. *See* Fla. Stat. Ann. § 961.02(4) (West 2012); *Fessenden v. State*, 52 So. 3d 1, 2 (Fla. Dist. Ct. App. 2010) (discussing the statutory requirement that an order vacating a conviction be based on exonerating evidence cannot be met in a situation where a case is reversed and remanded due to procedural error). However, our statute differs from Florida's in that it does not limit the right to seek recovery based on the reason for the reversal.

director of law, village solicitor, or other chief legal officer of a municipal corporation against the individual for any act associated with that conviction.

Ohio Rev. Code Ann. § 2743.48(A)(4) (LexisNexis 2008 & Supp. 2013). Thus, the statute does not specifically authorize a wrongful imprisonment claim to be brought following acquittal on retrial. Instead, like Iowa's law, it requires that the conviction have been vacated and that no further proceedings can or will be brought.

In *Walden v. State*, the Ohio Supreme Court allowed claims brought by two former inmates to proceed after they had been acquitted on retrial based on self-defense. *See* 547 N.E.2d 962, 965 (Ohio 1989). The court further held that the individuals' not guilty verdicts in their second trials should not be given preclusive effect. *Id.* at 966–67. A fundamental premise of the Ohio Supreme Court's opinion was that wrongful imprisonment claims could be brought after an acquittal on retrial; otherwise, the opinion's analysis does not make sense.

DeSimone filed his application on April 3, 2012. At that time, it was uncontroverted that we had vacated his conviction and sentence in 2011 and that no further proceedings would occur relating to the facts and circumstances of his original conviction. We hold the district court correctly decided DeSimone was eligible for relief under section 663A.1(1).

**B. Should the District Court Consider Prior Criminal Trial Testimony in Making the Actual Innocence Determination Even Without a Showing that the Witnesses Are Unavailable?** The State next asserts the district court erred when it declined to consider the prior testimony from DeSimone's two criminal trials in making the wrongful imprisonment determination. The district court reasoned the State had failed to show the witnesses were unavailable, an essential requirement

of the former testimony exception to the hearsay rule. *See* Iowa R. Evid. 5.804(*b*)(1). Therefore, it excluded this evidence.[5]

The district court's approach was not unreasonable. *See id.* 5.1101(a) (stating that the rules of evidence "apply in all proceedings in the courts of this state, . . . except as otherwise provided by rules of the Iowa Supreme Court"). However, there are situations where the legislature has carved out exceptions to the rules of evidence. *See, e.g.,* Iowa Code § 232.96(4)–(6) (child in need of assistance cases); *id.* § 252K.316 (interstate child support enforcement proceedings); *id.* § 631.11 (small claims); *id.* § 812.5 (competency hearings); *id.* § 822.7 (stating the court "may receive proof of affidavits, depositions, oral testimony, or other evidence" in a postconviction application hearing); *see also Manning v. State*, 654 N.W.2d 555, 559 (Iowa 2002) (discussing the trial on the merits of a postconviction relief application). We need to ask, therefore, what the legislature directed when it enacted chapter 663A.

Section 663A.1(2) instructs the district court to "make a determination" once it receives "an order vacating, dismissing, or reversing the conviction and sentence in a case for which no further proceedings can be or will be held against an individual." Iowa Code § 663A.1(2). Two things about this language should be noted. First, there is no mention of a hearing. Instead, the court is simply told to make a "determination." Second, the court is apparently authorized to make this determination sua sponte, without a party asking for it. As

---

[5]In *McCoy*, the individual seeking relief "submitted the trial transcript of the underlying criminal trial as evidence to support his application." 742 N.W.2d at 595. There is no indication the state objected. *Id.* Thus, we have not previously decided whether a party may successfully assert a hearsay objection to consideration of prior trial testimony.

soon as the triggering events have occurred, "the district court shall make a determination." *Id.* But if the court can make the determination on its own, it can only do so on the basis of the existing record, including prior testimony. In short, the directive to the district court to make a determination with or without a request is inconsistent with DeSimone's notion that the district court may not rely upon the existing record in making that determination.

Also bolstering the State's view are the belt-and-suspenders provisions regarding notice in the statute. If the district court finds the person was wrongfully imprisoned, it is not only required to enter an order, it is also required to "[o]rally inform the person and the person's attorney that the person has a right to commence a civil action against the state under chapter 669 on the basis of wrongful imprisonment." *See id.* § 663A.1(3)(*b*). Additionally, the clerk is required to forward a copy of the order to the wrongfully imprisoned person, "together with a copy of this section." *Id.* § 663A.1(4). At the same time, there is no requirement to issue an order if the person is not found to be wrongfully imprisoned. All this strongly suggests that the wrongful imprisonment determination can potentially occur without the affected individual even being aware the district court was acting. Thus, sections 663A.1(2), 663A.1(3), and 663A.1(4) point toward the conclusion that the legislature expected district courts would be able to make wrongful imprisonment determinations on the existing record, without taking new evidence.

DeSimone points out that the 663A.1 section heading reads, "Wrongful imprisonment—cause of action." However, this heading is appended to the entire section, not 663A.1(2). Reading the statute as a whole, one can readily conclude that section 663A.1(2) describes a preliminary determination that enables the individual to then proceed

with a full-blown "civil action" and "claim" as discussed in sections 663A.1(3)(*b*) and 663A.1(5) through 663A.1(8). In short, the statute taken as a whole certainly authorizes a "cause of action," but that does not mean the section 663A.1(2) preliminary determination must be subject to the same procedural requirements that attend a typical civil action.

In fact, we have previously stated that the section 663A.1(2) determination is only "a predicate review and assessment of the claim" that decides if "[a] person is entitled to commence a civil action." *McCoy*, 742 N.W.2d at 596 (citing *Dohlman*, 725 N.W.2d at 430–31). "This additional procedure permits the district court to serve as a gatekeeper of such claims to insure only meritorious claims for damages will be filed with the State Appeals Board." *Id.*

In addition, we think it would be impractical and undesirable for a completely new trial to be *mandated* whenever an individual whose conviction and prison sentence have been vacated seeks a wrongful imprisonment determination. Witnesses would have to be brought back to testify again, in some cases for the third time. While the State is the appellant in this case, such a requirement could disadvantage the recently-freed prisoner by increasing the time and cost involved in such a proceeding. In this case, DeSimone—to his attorney's credit—avoided that burden by serving the State with requests for admissions asking it to admit helpful facts from the first trial. However, in the future the State would likely employ the same tactic. Thus, the district court would be faced with dueling stacks of admissions concerning the prior proceedings. Why not let the court review the real thing?

Also, a review of other jurisdictions with wrongful imprisonment statutes indicates that the prevailing approach allows the previous

criminal trial testimony to be considered. Several jurisdictions have expressly said so in their wrongful imprisonment statutes.[6] Although the federal statute does not directly address the subject, longstanding federal precedent is to the same effect.[7] No state statutorily prohibits prior criminal case testimony from being considered. *See State Compensation Laws*, The Innocence Project, http://www.innocenceproject.org/news/ LawView1.php (last visited Nov. 6, 2013) (providing a list of all wrongful imprisonment compensation statutes). We have found only one reported statutory wrongful imprisonment case where testimony given in the prior criminal proceedings was excluded based upon a hearsay objection.[8]

[6]*See* Cal. Code Regs. tit. 2, § 641(b) (2013) ("The Board may consider as substantive evidence the prior testimony of witnesses claimant had an opportunity to cross-examine, and evidence admitted in prior proceedings for which claimant had an opportunity to object."); Colo. Rev. Stat. § 13-65-102(5)(f)(II) ("The district court shall use any transcripts that are within the court records for the judicial district of any proceeding involving the case that is the subject of the petition that the petitioner or the respondent wants the district court to consider."); 735 Ill. Comp. Stat. Ann. 5/2-702(f) ("In any hearing seeking a certificate of innocence, the court may take judicial notice of prior sworn testimony or evidence admitted in the criminal proceedings related to the convictions which resulted in the alleged wrongful incarceration, if the petitioner was either represented by counsel at such prior proceedings or the right to counsel was knowingly waived."); Va. Code Ann. § 19.2-327.11(D) (2008 & Supp. 2013) (allowing the court to inspect the whole or part of any record in a proceeding where an individual seeks a writ of actual innocence).

[7]*See United States v. Keegan*, 71 F. Supp. 623, 637 (S.D.N.Y. 1947) ("The fact that this duty [to grant a certificate of innocence] has been imposed upon the trial court, would create the inference that the court would rely primarily on the record of the trial of petitioner had therein."); *see also United States v. Brunner*, 200 F.2d 276, 279 (6th Cir. 1952) (approving *Keegan*).

[8]*See Morales v. State*, 705 N.Y.S.2d 176, 179 (Ct. Cl. 2000). In *Morales*, the court applied hearsay principles to exclude expert testimony from the underlying criminal trial in an action brought under the Unjust Conviction and Imprisonment Act. *Id.* at 177, 179. In that case, the exclusion of the expert testimony worked against the previously imprisoned individual, who had sought to use that former testimony in his wrongful imprisonment proceeding. *Id.* at 179. The court further noted that New York's Unjust Conviction and Imprisonment Act authorized courts to admit evidence only "as permitted by law." *Id.* at 179 & n.5; *see also* N.Y. Ct. Cl. Act § 8-b[1]. It interpreted the "permitted by law" language as embodying the requirements of New York's hearsay rule. *Morales*, 705 N.Y.S.2d at 179 & n.5. Iowa's statute has no such language.

The evidentiary ground rules for wrongful imprisonment proceedings were recently addressed in an Oklahoma Supreme Court decision. *See Courtney v. State*, 307 P.3d 337 (Okla. 2013). Oklahoma's wrongful imprisonment statute has a similar framework to Iowa's. To obtain relief, unless there has been a full pardon on the basis of a written finding by the governor that the individual was actually innocent, the individual must show "by clear and convincing evidence that the offense for which the individual was convicted, sentenced and imprisoned, including any lesser included offenses, was not committed by the individual." Okla. Stat. Ann. tit. 51, § 154(B)(2)(e)(2) (West 2008).

In *Courtney*, the applicant sought the required judicial determination of innocence following a postconviction hearing that had resulted in a vacated sentence. *See* 307 P.3d at 340. The Oklahoma Supreme Court stated the actual innocence determination is "an ancillary issue to be determined in a supplemental proceeding" in which the court "makes use of the evidence adduced at the post-conviction relief proceeding as well as other evidence." *Id.* at 340–41.

Along the lines of *Courtney*, we believe the prior evidence should be considered, but the parties should be able to present *additional* relevant and material evidence as part of the actual innocence determination, if they timely request an opportunity to do so. In a criminal trial, the defendant has an absolute right not to testify. *State v. Washington*, 832 N.W.2d 650, 656 (Iowa 2013) ("The Fifth Amendment to the United States Constitution provides, 'No person . . . shall be compelled in any criminal case to be a witness against himself . . . .' " (quoting U.S. Const. amend. V)); *State v. Walls*, 761 N.W.2d 683, 685 (Iowa 2009) (discussing that the Fourteenth Amendment Due Process Clause makes the Fifth Amendment right against self-incrimination binding on the states). In fact, the

defendant has no obligation to present evidence at all. *State v. Kemp,* 688 N.W.2d 785, 789 (Iowa 2004) ("The State has the burden to prove every fact necessary to constitute the crime . . . ."); *State v. Hansen,* 203 N.W.2d 216, 220 (Iowa 1972) (noting a defendant has the right to offer no evidence and can simply submit the State's case to the jury to determine whether the prosecution has carried its burden). Limiting the actual innocence determination to the prior criminal trial record would be inconsistent with those rights. At the same time, fairness dictates that the State should have a similar opportunity to present other admissible evidence bearing upon the actual innocence question.

For the foregoing reasons, we hold the district court should consider evidence that was admitted at the prior criminal trial or trials, including prior testimony, in making the section 663A.1(2) determination. Either party may also present additional evidence, as DeSimone did in this case.

**C. Was There Substantial Evidence to Support the District Court's Finding of Actual Innocence?** We last turn to the State's claim that there was no substantial evidence to support the district court's finding under section 663A.1(2) that DeSimone had not committed sexual abuse or a lesser included offense. Although our resolution of the previous issue would ordinarily require a remand for the court to reconsider its section 663A.1(2) determination in light of the prior trial transcripts, such a remand would be unnecessary if the existing finding were not supported by substantial evidence. In that case, we would simply reverse with instructions to deny DeSimone's application.

Under section 663A.1(2), innocence can be shown by clear and convincing proof that the individual did not commit the acts or that the acts in question did not constitute a crime. *McCoy,* 742 N.W.2d at 598.

To find actual innocence, "[t]he district court must have no serious or substantial doubt about the person's criminal involvement in the crime of conviction." *Id.* at 600 n.7.

As we have noted above, at the wrongful imprisonment hearing, DeSimone introduced the State's responses to requests for admissions that confirmed the lack of physical evidence in the case. DeSimone also testified in person, and the court specifically found him credible. There are some inconsistencies between DeSimone's November 2012 hearing testimony and the recorded statement that DeSimone gave to police in November 2004, shortly after the events in question.[9] For example, in his original statement, DeSimone said that he was pretty drunk on the evening of the party but denied that Samantha had anything to drink at the party. He also said he remembered seeing Samantha sleeping with her head down at his kitchen table, but did not mention that he saw her engaged in sexual activity with Baker in the kitchen. Still, we believe there is substantial evidence, on the record that was before the district court, to support its finding of actual innocence. *See Mitchell v. Cedar Rapids Cmty. Sch. Dist.*, 832 N.W.2d 689, 703 (Iowa 2013) ("Substantial evidence is evidence that a reasonable person would find sufficient to reach a given conclusion."). Therefore, a remand is needed for the district court to reconsider its section 663A.1(2) determination in light of a more complete record, i.e., one that includes the testimony from the prior criminal trials.

---

[9]This recorded statement was admitted as an exhibit in the second criminal trial. DeSimone concedes the recording was not subject to the district court's evidentiary ruling excluding the transcripts of prior testimony. The recording is part of our record on appeal. However, it is not clear that the district court actually had the recording before it when it ruled on DeSimone's wrongful imprisonment application. At the wrongful imprisonment hearing, the State did not refer to the recorded statement or the other previous criminal trial exhibits.

**IV. Conclusion.**

For the foregoing reasons, we uphold the district court's conclusion that DeSimone met the eligibility criteria set forth in section 663A.1(1), but we reverse its ruling that the prior criminal trial testimony could not be considered in making the section 663A.1(2) determination. We remand for further proceedings.

**REVERSED AND REMANDED.**