# IN THE SUPREME COURT OF IOWA

No. 54 / 06-0339

Filed December 21, 2007

**STATE OF IOWA**,

Appellee,

vs.

**DARRYL ANTHONY McCOY**,

Appellant.

Appeal from the Iowa District Court for Scott County, Gary D. McKenrick, Judge.

Appeal from district court decision denying a request to bring a claim against the State of Iowa as a wrongfully imprisoned person. **AFFIRMED.**

Rockne O. Cole, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney General, for appellee.

**CADY, Justice.**

In this appeal, we must determine whether the district court erred in determining that an individual was not a "wrongfully imprisoned person" entitled to bring a claim for damages under the Iowa Tort Claims Act. On our review of the district court decision, we affirm.

## I. Background Facts and Proceedings.

Darryl McCoy was charged by a trial information with the first-degree murder and willful injury of Jonathan Johnson. Johnson was found dead in the backseat of his car on January 27, 2002, in Davenport. He was covered with a blanket and had a plastic bag over his head. Johnson had been shot multiple times, stabbed, cut, and struck with blunt force to the head.

On September 13, 2002, McCoy was convicted of the charges following a jury trial. The evidence at trial revealed McCoy was at an apartment in Davenport with his brother and an individual named Chance Barnes. Johnson and an individual named Jerome Wilson came to the apartment and knocked on the door. A dispute quickly erupted between McCoy's brother and Johnson, and Wilson was instructed to leave the premises. Wilson complied and went outside the apartment building. He then heard loud noises emanating from the apartment. Barnes subsequently exited the apartment, and Wilson asked him about the whereabouts of Johnson. Barnes told Wilson not to worry about Johnson and not to enter the apartment. McCoy made numerous incriminating statements to police following his arrest, and these statements were introduced into evidence at the trial. Essentially, McCoy told police he observed his brother and Barnes engage in a fight with Johnson in the apartment before they shot and stabbed him. McCoy also confessed to

helping dispose of the dead body and cleaning the apartment after the murder.

McCoy was sentenced by the district court to a term of life imprisonment on October 10, 2002. He was placed in one of the state correctional institutions to serve his sentence. McCoy appealed the conviction and sentence.

On February 4, 2005, we reversed the judgment of conviction and sentence against McCoy and remanded the case for a new trial. *See State v. McCoy*, 692 N.W.2d 6 (Iowa 2005). We concluded McCoy received ineffective assistance of counsel at his trial because his trial counsel failed to seek suppression of the incriminating statements made to police. We determined the statements were involuntary and the admission of the statements at trial was prejudicial.

Following the remand for a new trial, the county attorney filed a motion to dismiss the charges against McCoy in the interest of justice. The county attorney believed the State could not obtain a conviction on retrial without the incriminating statements found to be inadmissible on appeal. The district court granted the motion and dismissed the charges against McCoy on March 23, 2005. McCoy was released from imprisonment after being confined for over three years.

On October 3, 2005, McCoy filed an application with the district court requesting a determination that he was a "wrongfully imprisoned person" and entitled to seek compensation from the state. The Attorney General of Iowa filed a resistance to the application, and the application was scheduled for a hearing. McCoy submitted the trial transcript of the underlying criminal trial as evidence to support his application, excluding the evidence of his incriminating statements.

The district court agreed with McCoy that the incriminating statements could not be considered as evidence at the hearing in determining McCoy's right to seek compensation as a wrongfully imprisoned person. Nevertheless, the district court found McCoy failed to establish he was entitled to bring an action as a "wrongfully imprisoned person." The district court determined McCoy was not a "wrongfully imprisoned person" because it was possible for the State to refile a murder charge against him in the future. The district court also found McCoy failed to establish he did not commit the murder or the willful injury.

McCoy appealed and raises two claims. First, he claims the evidence supported a finding that he was a "wrongfully imprisoned person." Second, he claims the evidence established he did not commit murder or any lesser included offense.

## II.  Standard of Review.

Our review from the district court's ruling on an application to file a claim as a "wrongfully imprisoned person" is for correction of errors at law. *State v. Dohlman*, 725 N.W.2d 428, 430 (Iowa 2006). We uphold the findings of the district court if supported by substantial evidence. *Id.*

## III.  Wrongful Imprisonment.

The Iowa wrongful imprisonment statute creates a cause of action for wrongful imprisonment that permits a person to commence an action for damages under the State Tort Claims Act. *See generally* Iowa Code ch. 663A (2005). We have previously considered the framework of our statute and observed that Iowa was one of a growing number of states to enact wrongful imprisonment compensation legislation. *Dohlman*, 725 N.W.2d at 430–31 (discussing statutory framework); *Cox v. State*, 686 N.W.2d 209, 212

(Iowa 2004).[1]  The statutes are a response to the mounting evidence of innocent persons who have been wrongfully convicted and imprisoned in this country.  *See generally* Adele Bernhard, *Justice Still Fails: A Review of Recent Efforts to Compensate Individuals Who Have Been Unjustly Convicted and Later Exonerated*, 52 Drake L. Rev. 703, 711–13 (2004).  Iowa's statute was enacted in 1997.  *See* 1997 Iowa Acts ch. 196.

Like other persons permitted to bring a tort action against the state, a wrongfully imprisoned person is given the right to sue the state in district court for damages after first presenting the claim to the State Appeals Board.  *See* Iowa Code §§ 669.3–.5; *see also id.* § 669.14 (listing claims that are excepted from the State Tort Claims Act).  However, a wrongfully imprisoned person must first clear a hurdle not set for other state tort claimants.  A wrongfully imprisoned person may not proceed with a lawsuit under the State Tort Claims Act until the district court has conducted a predicate review and assessment of the claim and found the person is entitled to commence a civil action based on two preliminary findings.  *See Dohlman*, 725 N.W.2d at 430–31.  This additional procedure permits the district court to serve as a gatekeeper of such claims to insure only meritorious claims for damages will be filed with the State Appeals Board.

The first essential finding required to be made by the district court in its gatekeeping function is the claimant must be a "wrongfully imprisoned person."  Iowa Code § 663A.1(3).  The statute provides five criteria that must be satisfied to be a "wrongfully imprisoned person."  *Id.* § 663A.1(1).  Generally, those criteria consider the seriousness of the charge, form of

---

[1]In *Cox v. State*, we observed that Iowa was among 16 jurisdictions to enact a wrongful imprisonment statute.  686 N.W.2d at 212.  There are now 22 states, as well as the federal government, with some form of a compensation statute.  The Innocence Project, *State Compensation Laws*, http://www.innocenceproject.org/news/LawView1.php (last visited Dec. 18, 2007).

conviction, term of incarceration, disposition of the conviction, and reason for the imprisonment. *Id.* The second essential finding is the claimant did not commit the offense or the offense was not committed by any person. *Id.* § 663A.1(2). Both findings must be made. *Id.* Otherwise, the person has no right to pursue a claim under the State Tort Claims Act. *Id.* § 663A.1(3).

The two separate findings reveal that the right to sue the state under the State Tort Claims Act as a "wrongfully imprisoned person" not only requires the person qualify as a "wrongfully imprisoned person," but also requires the person be a "wrongfully imprisoned person" who did not commit the offense or whose offense of conviction was not committed by any person.[2] *Id.* This distinction reveals the crux of the right to seek recovery as a wrongfully imprisoned person is the second finding that requires the person to be an "innocent man" or woman.[3] *See Dohlman,* 725 N.W.2d at 435 (observing the statute normally requires complete exoneration); *Cox,* 686 N.W.2d at 214 (stating "an action under chapter 663A is based on imprisonment of an innocent person").

The second finding under the statute must be based on "clear and convincing evidence." Iowa Code § 663A.1(2). The statute, however, does

---

[2]In *Dohlman,* we did not specifically distinguish between a "wrongfully imprisoned person" and a "wrongfully imprisoned person" entitled to sue for damages in reviewing the framework of the statute. *See* 725 N.W.2d at 431. However, we were not required to do so in *Dohlman* because the parties agreed the defendant met the five criteria of a "wrongfully imprisoned person" under section 663A.1(1). *Id.* Yet, the holding in *Dohlman* reinforces this distinction. In *Dohlman,* the defendant met the five criteria of a "wrongfully imprisoned person," but had no right to sue for damages because he was unable to establish he did not commit the offense. *Id.* at 431–35.

[3]"The Innocent Man" is the title of a book by John Grisham that chronicles the life of a wrongfully imprisoned person, Ron Williamson, in the State of Oklahoma. Williamson was eventually exonerated by DNA evidence after serving 11 years of incarceration on death row following his conviction for capital murder in 1988. He died in 2004, an innocent man. John Grisham, *The Innocent Man* (Doubleday 2006). The list of convicted prisoners in the United States, maintained by The Innocence Project, who have been exonerated by DNA evidence since 1989 now numbers 210 and includes at least one woman, Paula Gray. *See* The Innocence Project, *The Innocence Project Profiles,* http://www.innocenceproject.org/know/Browse-Profiles.php (last visited Dec. 18, 2007).

not provide for any standard of proof to make the first finding of a "wrongfully imprisoned person." *See id.* § 663A.1(1). This approach signals the second finding is a product of a fact-intensive process, while the first finding is primarily met through an examination of court records and documents by the district court that confirm each criterion. In fact, the statute does not require the district court to make the second finding until presented with "an order vacating, dismissing, or reversing the conviction and sentence in a case for which no further proceedings can be or will be held against an individual on any facts and circumstances alleged in the proceedings which resulted in the conviction." *Id.* § 663A.1(2).[4]

In this case, the district court determined McCoy was not a "wrongfully imprisoned person" and then proceeded to also determine that he failed to establish that the offenses of conviction were not committed by him. Accordingly, we can affirm on either ground. In other words, we normally do not decide an issue on appeal when another issue is dispositive. For that reason, we proceed to review the decision by the district court that McCoy failed to establish the offenses of conviction were not committed by him.[5]

---

[4]This predicate statutory requirement for a hearing to determine innocence is tied to the fourth criterion of a "wrongfully imprisoned person," that "[t]he individual's conviction was vacated or dismissed, or was reversed, and no further proceedings can be or will be held against the individual on any facts or circumstances alleged in the proceedings which had resulted in the conviction." Iowa Code § 663A.1(1)(*d*). While the fourth criterion can be documented by an order, it may also require the district court to make a legal determination that "no further proceedings *can be or will be* held against the individual." *Id.* (emphasis added).

[5]McCoy did not claim that the offenses of murder and willful injury were "not committed by any person." Iowa Code § 663A.1(2)(*b*). McCoy's brother and Chance Barnes were successfully prosecuted for the murder of Jonathan Johnson. *See State v. McCoy*, No. 02-1516, 2003 WL 22899507, *3 (Iowa App. Dec. 10, 2003 ) (affirming first-degree murder conviction of Lawrence McCoy); *State v. Barnes*, No. 02-1363, 2003 WL 22340208, *3 (Iowa App. Oct. 15, 2003) (affirming first-degree murder conviction of Chance Barnes).

The lynchpin of a wrongful imprisonment proceeding before the district court is innocence. *See Cox*, 686 N.W.2d at 212. Under the statute, innocence may be established in one of two ways. The person seeking authorization to file a tort claim against the state must establish by clear and convincing evidence either the person did not commit the offense (for which the person was convicted, sentenced, and imprisoned), including a lesser offense, or that the offense was not committed by any person. Iowa Code § 663A.1(2); *Dohlman*, 725 N.W.2d at 435. Generally, this means there must be proof the person did not commit the acts charged or that the acts committed did not constitute a crime. *See Dohlman*, 725 N.W.2d at 433–35 (finding claimant failed to prove he did not commit the crime).

The burden imposed on a wrongfully imprisoned person is difficult to meet because it requires the person to prove a negative. *See Elkins v. United States*, 364 U.S. 206, 218, 80 S. Ct. 1437, 1444, 4 L. Ed. 2d 1669, 1678 (1960) (noting that "as a practical matter, it is never easy to prove a negative"). Essentially, it means the person must show he or she was actually innocent of the crime, or no crime occurred. *Dohlman*, 725 N.W.2d at 435 ("In most cases, this status will apply to a person who is completely exonerated of the crime for which he was imprisoned, or if it is determined the victim fabricated that crime."). Thus, we have said it is not enough for the person seeking the right to sue for compensation as a wrongfully imprisoned person to merely establish that a reviewing court determined the conviction was not supported by substantial evidence. *Id.* at 433. Such a finding only signifies a reasonable fact finder could not be convinced of guilt beyond a reasonable doubt. *Id.* When the crime of conviction was committed by someone, the person seeking the right to sue as a wrongfully imprisoned person must affirmatively establish by clear and convincing

evidence that he or she did not commit the crime or any lesser included crime.

McCoy claims the transcript of the evidence at his criminal trial, stripped of the inadmissible evidence of his involuntary statements, establishes he did not commit the murder or willful injury, or any lesser included offense. In other words, McCoy claims the absence of proof of his criminal guilt in the trial transcript constitutes evidence of his innocence.

The State argues that incriminating statements excluded from a criminal prosecution can still be admitted at a hearing under the wrongfully imprisoned person statute because it is a civil proceeding. *See United States v. Janis*, 428 U.S. 433, 460, 96 S. Ct. 3021, 3035, 49 L. Ed. 2d 1046, 1064 (1976) (refusing to exclude evidence seized unlawfully by a criminal law enforcement agent of one sovereign in a civil proceeding against another sovereign). The district court, however, refused to consider McCoy's incriminating statements at the wrongfully imprisoned person hearing. Nevertheless, the district court found the redacted transcript failed to establish by clear and convincing evidence that McCoy did not commit the crimes. Accordingly, we need not decide the evidentiary dispute if the redacted record supports the trial court finding.[6]

Normally, a transcript of the evidence at a criminal trial, by itself, will not provide the evidence necessary to establish innocence under section 663A.1(2). As determined in *Dohlman*, a wrongfully imprisoned person must establish more than the absence of guilt in law to establish innocence under section 668A.1(2). *Dohlman*, 725 N.W.2d at 433. The person must

---

[6]Some state compensation statutes have been interpreted to preclude recovery by persons who voluntarily confess to the crime, based on statutory language that disqualifies persons from compensation who have contributed to their own conviction in some way. *See* Bernhard, *Justice Still Fails*, at 717–18. The Iowa wrongful imprisonment statute does not contain such language, but does disqualify a person who has pled guilty from being a "wrongfully imprisoned person" under section 663A.1(1)(*b*).

be factually innocent, not merely procedurally free from reprosecution or not guilty. *See* Hugo Adam Bedau, Michael A. Radelet & Constance E. Putnam, *Convicting the Innocent in Capital Cases: Criteria, Evidence, and Inference*, 52 Drake L. Rev. 587, 598 (2004) (recognizing an acquittal or reversal of a conviction may constitute an adjudication of "procedural innocence," but "[w]hether such a defendant was also factually innocent is a further question never settled just by the fact that some appellate court correctly found procedural or due process objections to the defendant's conviction or sentence"). Thus, we turn to the record presented at the hearing to determine if it supported the district court finding that McCoy failed to show he did not commit the murder or willful injury.

In this case, the district court found McCoy failed to establish his innocence due to the evidence in the trial transcript that he was present at the scene of the murder at the time it may have taken place. This finding is based on the trial testimony of a witness who accompanied the murder victim to an apartment occupied by McCoy and others. This was the last time the witness saw the victim alive. The evidence suggests a fight involving the victim occurred in the apartment during the time McCoy was present and after the witness was instructed to leave the apartment. The witness was also later instructed not to return to the apartment.

Our review of this evidence supports the conclusion of the district court. This evidence presents too many unanswered questions about McCoy's role in the murder, which the wrongfully-imprisoned-person hearing failed to answer. To prove a negative by clear and convincing evidence, it is not enough for a wrongfully imprisoned person to merely create questions and doubts about his or her involvement in the crime of conviction. Instead, the person must affirmatively answer those doubts and questions to the point that the district court will be convinced the person

did not commit the crime or any lesser included crime.[7]  McCoy has failed to do this.  There was ample evidence to support the finding of the district court.

### IV. Conclusion.

Substantial evidence supports the finding by the district court that McCoy failed to establish his right to sue the State as a wrongfully imprisoned person.  We affirm the district court.

**AFFIRMED.**

---

[7]The district court must have no serious or substantial doubt about the person's criminal involvement in the crime of conviction to find the person did not commit the crime. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).  The 2007 Model State Compensation legislation developed by The Innocence Project requires the claimant to prove "[h]e did not commit any of the acts charged in the accusatory instrument or the acts or omissions charged in the accusatory instrument did not constitute a crime."  The Innocence Project, *Model Legislation, 2007 State Legislative Sessions:  An Act Concerning Claims for Wrongful Conviction and Imprisonment* 1, 3, *available at* http://www.innocenceproject.org/docs/Model_Compensation_Statute.pdf (last visited Dec. 18, 2007).