# IN THE SUPREME COURT OF IOWA

No. 12–1771

Filed April 4, 2014

**TAMMY SMITH,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Humboldt County, Gary L. McMinimee, Judge.

An applicant seeks further review of a court of appeals decision affirming the district court judgment that she did not qualify for compensation as a wrongfully imprisoned person. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Derek J. Johnson of Johnson & Bonzer, PLC, Fort Dodge, and Dani L. Eisentrager of Eisentrager Law Office, Eagle Grove, for appellant.

Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney General, for appellee.

**WIGGINS, Justice.**

An applicant seeks further review of a court of appeals decision affirming the district court judgment that she did not qualify for compensation as a wrongfully imprisoned person. We agree with the court of appeals that substantial evidence supports the district court's finding the applicant did not establish by clear and convincing evidence neither she nor anyone else committed the crime of child endangerment. Therefore, we affirm the decision of the court of appeals and the judgment of the district court.

## I. Background Facts and Proceedings.

On June 1, 2007, a jury convicted the applicant, Tammy Smith, of child endangerment resulting in serious injury against her four-year-old, nonverbal son, G.S., under Iowa Code sections 726.6(1)(*a*) and 726.6(5) (2005). Child endangerment resulting in serious injury is a class "C" felony. *Id.* § 726.6(5). The district court sentenced Smith to an indeterminate term of imprisonment not to exceed ten years, with credit for time served.

The court of appeals affirmed Smith's conviction for the crime of child endangerment resulting in serious injury by finding substantial evidence supported the conviction. The substantial evidence consisted of Smith's inconsistent stories as to how the injury occurred, the medical testimony G.S.'s injury most likely did not happen in the way Smith described, and the medical testimony the injury could have occurred by a person applying tremendous force to G.S.'s arm. G.S. was nonverbal and unable to testify at Smith's trial as to how the injury happened. The court of appeals held the evidence was sufficient for the jury to find G.S.'s injury occurred as a result of Smith knowingly acting in a manner to create a risk to G.S.'s physical health or safety.

In 2009, Smith applied for postconviction relief based on evidence G.S. communicated his injury occurred when he placed his arm in the washing machine. The district court denied her application. The court of appeals, in its review of the postconviction relief proceedings, held this was newly discovered evidence and ordered a new trial. On remand, the district court vacated Smith's conviction and granted the county attorney's motion to dismiss the case against Smith.

On November 21, 2011, Smith filed a petition for wrongful imprisonment under Iowa Code section 663A.1 (2011). The district court determined Smith did not establish by clear and convincing evidence neither she nor anyone else committed the crime of child endangerment resulting in serious injury. Smith appealed and we transferred the case to the court of appeals. The court of appeals affirmed. We granted further review. We will detail other facts necessary to our decision in our analysis.

**II. Issue.**

The issue before us is whether Smith is a wrongfully imprisoned person under Iowa Code section 663A.1.

**III. Standard of Review.**

We review wrongful imprisonment claims for correction of errors at law. *State v. Dohlman*, 725 N.W.2d 428, 430 (Iowa 2006). If substantial evidence supports the district court's factual findings, we uphold the findings. *State v. McCoy*, 742 N.W.2d 593, 596 (Iowa 2007). "We consider evidence as substantial if a reasonable person would accept the evidence as adequate to reach the district court's conclusion." *Dohlman*, 725 N.W.2d at 430. When the district court denies compensation, our review is "whether substantial evidence supports the district court's

determination that [the claimant] did not prove the requirements of section 663A.1(2) by clear and convincing evidence." *Id.*

## IV. Statutory Framework.

The legislature created a statutory cause of action for wrongful imprisonment. *See* Iowa Code § 663A.1. The statute provides in relevant part:

> 1. As used in this section, a "*wrongfully imprisoned person*" means an individual who meets all of the following criteria:
>
> *a.* The individual was charged, by indictment or information, with the commission of a public offense classified as an aggravated misdemeanor or felony.
>
> *b.* The individual did not plead guilty to the public offense charged, or to any lesser included offense, but was convicted by the court or by a jury of an offense classified as an aggravated misdemeanor or felony.
>
> *c.* The individual was sentenced to incarceration for a term of imprisonment not to exceed two years if the offense was an aggravated misdemeanor or to an indeterminate term of years under chapter 902 if the offense was a felony, as a result of the conviction.
>
> *d.* The individual's conviction was vacated or dismissed, or was reversed, and no further proceedings can be or will be held against the individual on any facts and circumstances alleged in the proceedings which had resulted in the conviction.
>
> *e.* The individual was imprisoned solely on the basis of the conviction that was vacated, dismissed, or reversed and on which no further proceedings can be or will be had.
>
> 2. Upon receipt of an order vacating, dismissing, or reversing the conviction and sentence in a case for which no further proceedings can be or will be held against an individual on any facts and circumstances alleged in the proceedings which resulted in the conviction, the district court shall make a determination whether there is clear and convincing evidence to establish either of the following findings:

*a.* That the offense for which the individual was convicted, sentenced, and imprisoned, including any lesser included offenses, was not committed by the individual.

*b.* That the offense for which the individual was convicted, sentenced, and imprisoned was not committed by any person, including the individual.

3. If the district court finds that there is clear and convincing evidence to support either of the findings specified in subsection 2, the district court shall do all of the following:

*a.* Enter an order finding that the individual is a wrongfully imprisoned person.

*b.* Orally inform the person and the person's attorney that the person has a right to commence a civil action against the state under chapter 669 on the basis of wrongful imprisonment.

Iowa Code § 663A.1(1)–(3).

**V. Analysis.**

A cause of action for wrongful imprisonment is statutory. Thus, to determine if an applicant is entitled to compensation we must apply the statute to the facts.

**A. Whether Smith Is a Wrongfully Imprisoned Person.** The first step in a cause of action for wrongful imprisonment is to determine if the applicant meets the definition of a wrongfully imprisoned person under Iowa Code section 663A.1(1). *McCoy*, 742 N.W.2d at 596–97. To qualify as a wrongfully imprisoned person, the applicant must meet the requirements of Iowa Code sections 663A.1(1)(*a*)–(*e*). The court decides whether the applicant is a wrongfully imprisoned person by examining the court record to determine if the applicant meets each criterion under section 663A.1(1). *McCoy*, 742 N.W.2d at 597.

The district court examined the record and decided Smith satisfied the first step of this analysis because she met the five criteria of Iowa

Code section 663A.1(1). The State charged Smith with the felony of child endangerment resulting in serious injury, a jury convicted her, and the district court sentenced her to an indeterminate term of imprisonment not to exceed ten years under Iowa Code section 902.9(4) (2005). The court of appeals vacated Smith's sentence, and the State imprisoned Smith solely because of this conviction. The parties do not challenge this determination.

**B.  Whether Clear and Convincing Evidence Supports a Finding the Offense for Which Smith Was Convicted, Sentenced, and Imprisoned Was Not Committed by Any Person, Including Smith.** Once the court determines the applicant is a wrongfully imprisoned person, the second step is for the court to determine whether there is clear and convincing evidence to establish one of two requirements: either the individual did not commit the offense, or any lesser included offenses, "for which the individual was convicted, sentenced, and imprisoned"; or no person, including the individual, committed the offense "for which the individual was convicted, sentenced, and imprisoned." Iowa Code § 663A.1(2) (2011); *accord McCoy*, 742 N.W.2d at 597. We have placed the burden of proof to establish either of these requirements on the applicant. *See McCoy*, 742 N.W.2d at 598. By proving either of these requirements, the applicant has proved his or her innocence. *Id.* If the district court finds the person proved either of these requirements by clear and convincing evidence, the district court will enter an order identifying the person as a wrongfully imprisoned person and inform the person he or she has a right to begin a civil action against the State under Iowa Code chapter 669. Iowa Code § 663A.1(3).

The first alternative requirement under section 663A.1(2) requires the applicant to prove "[t]hat the offense for which the individual was

convicted, sentenced, and imprisoned, including any lesser included offenses, was not committed by the individual." *Id.* § 663A.1(2)(*a*). This requirement assumes a crime was committed, but not by the applicant. A classic example would be a case of mistaken identity in a robbery. Smith claims the newly discovered evidence establishes she did not inflict G.S.'s injuries, but rather the injuries were the result of an accident caused by G.S. putting his arm in the washing machine while the spin cycle was on. Thus, the first alternative will not apply because she is arguing no person has committed child endangerment resulting in serious injury. Accordingly, our analysis is focused on Iowa Code section 663A.1(2)(*b*).

The second alternative requirement under Iowa Code section 663A.1(2)(*b*) requires the applicant to prove by clear and convincing evidence "[t]hat the offense for which the individual was convicted, sentenced, and imprisoned was not committed by any person, including the individual." *Id.* § 663A.1(2)(*b*). In *Dohlman*, we examined a cause of action for wrongful imprisonment, and we discussed what was necessary for an applicant to meet his or her burden under Iowa Code section 663A.1(2). *Dohlman*, 725 N.W.2d at 432–35.

In *Dohlman*, in order to prove homicide by vehicle, the State had to prove beyond a reasonable doubt that Dohlman was operating his vehicle under the influence of alcohol at the time of the victim's death. *See Dohlman*, 725 N.W.2d at 434. The court of appeals overturned his homicide-by-vehicle conviction for insufficient evidence on the element of intoxication. Without proof Dohlman was operating his vehicle under the influence of alcohol at the time of the victim's death, Dohlman did not commit a crime under the statute, and the crash was nothing more than a fatal accident resulting in no criminal liability.

We said the reversal of a conviction for homicide by vehicle on the ground substantial evidence did not support the conviction did not mean the applicant automatically met his burden to prove a crime was not committed under Iowa Code section 663A.1(2). *Dohlman,* 725 N.W.2d at 432–33. Rather, the finding by the "appellate court only means when the court views the evidence in the light most favorable to the State, a rational trier of fact cannot find the defendant guilty beyond a reasonable doubt." *Id.* at 433.

We then examined the evidence contained in the wrongful imprisonment record. *Id.* at 434–35. We found even though the evidence introduced in the criminal trial would not allow a rational trier of fact to find Dohlman guilty beyond a reasonable doubt of the crime of homicide by vehicle, the same evidence was sufficient to defeat Dohlman's claim that no person, including himself, committed the crime. *See id.* We reached this conclusion because of the burden on the applicant to prove by clear and convincing evidence no person committed the crime. *See id.* at 435.

The clear and convincing evidence standard "means there are no serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence." *In re C.B.,* 611 N.W.2d 489, 492 (Iowa 2000). In other words, the applicant meets his or her burden if the evidence leaves no serious or substantial doubts that the crime for which the applicant was convicted was not committed by anyone. In *Dohlman,* the evidence supported the proposition a person's driving skills are impaired when that person's blood alcohol level exceeds .05%. *See Dohlman,* 725 N.W.2d at 435. This evidence left us with serious or substantial doubts that Dohlman was not driving his vehicle while under the influence of alcohol when a criminologist testified his blood alcohol level was between

.081 and .096%. *See id.* at 435. Thus, we concluded Dohlman did not meet his burden of proof. *Id.*

To determine whether an applicant has met his or her burden of proof under Iowa Code section 663A.1(2)(*b*) that no person committed the crime, we must review the wrongful imprisonment record and be satisfied that we do not have any serious or substantial doubts that any person did not commit a crime. This is a very high burden for the applicant to meet. However, the legislature purposefully made the burden high because the essence of a wrongful imprisonment claim is innocence. *See McCoy*, 742 N.W.2d at 598.

**C. Whether Substantial Evidence Supports the District Court's Finding Smith Did Not Establish Her Wrongful Imprisonment Action by Clear and Convincing Evidence.** The district court found Smith did not prove by clear and convincing evidence she did not commit or any person did not commit the crime of child endangerment resulting in serious injury. This finding means the district court had serious or substantial doubts that the crime of child endangerment resulting in serious injury was not committed by any person including Smith. In reaching this conclusion, the district court took judicial notice of the records in the criminal case, the records in the postconviction relief case, and the testimony presented in this matter. The district court was correct when it used these records in making its finding under Iowa Code section 663A.1. *See State v. DeSimone*, 839 N.W.2d 660, 672–73 (Iowa 2013) (stating the wrongful conviction record includes the records in the underlying criminal case). Our task on appeal is to determine if substantial evidence supports the district court's finding.

Smith was charged and convicted under Iowa Code sections 726.6(1)(*a*) and 726.6(5) (2005). The legislature defines the crime of child endangerment resulting in serious injury as follows:

> 1. A person who is the parent, guardian, or person having custody or control over a child or a minor under the age of eighteen with a mental or physical disability, or a person who is a member of the household in which a child or such a minor resides, commits child endangerment when the person does any of the following:
>
> *a.* Knowingly acts in a manner that creates a substantial risk to a child or minor's physical, mental or emotional health or safety.
>
> . . . .
>
> 5. A person who commits child endangerment resulting in serious injury to a child or minor is guilty of a class "C" felony.

Iowa Code § 726.6(1)(*a*), (5).

Smith testified at the wrongful imprisonment hearing she saw G.S. come up from the basement with his injured arm. She stated she did not know until G.S. testified at the wrongful imprisonment hearing how G.S. had injured his arm that day. Smith did not see the injury happen. At the original trial, G.S. was unable to communicate how the injury occurred.

This testimony is very different from the testimony Smith gave before her trial when she told at least three different stories explaining how G.S. injured his arm. Smith told one doctor she was removing clothes from the dryer and then saw G.S. on the floor with a broken arm. She told another doctor G.S. broke his arm by taking clothes out of the dryer. Smith told still another doctor G.S. fell down the stairs and broke his arm.

The medical testimony from her original criminal trial reveals Smith's stories were inconsistent with the medical evidence. Smith's story that G.S. fell was not consistent with one pediatrician's testimony that the injury appeared to require substantial force and was inconsistent with a fall on a concrete floor. G.S.'s orthopedic surgeon noticed it was an unusual fracture pattern for a child falling to the floor, and he had some suspicions about Smith's story. The surgeon testified he "thought a significant amount of force had been applied to [G.S.'s] arm as opposed to a slip and fall in the basement." G.S.'s pediatric hospitalist also received the story from Smith that G.S. had fallen to the concrete floor. Another pediatric orthopedic surgeon received the story from Smith that G.S. fell down the stairs. The surgeon stated the multiple breaks in G.S.'s arm were unusual, and he typically saw these types of breaks in a traumatic injury. He testified it was his medical opinion G.S. did not receive these injuries from falling down the stairs or falling to a concrete floor. Further, he stated to a reasonable degree of medical certainty G.S.'s broken bones could have resulted from an adult applying physical force to G.S.'s arm.

At the wrongful imprisonment hearing, Smith admitted none of these stories was true. Smith stated she told the different stories because she was scared for her family and she thought she needed to have an explanation for G.S.'s injury.

At the wrongful imprisonment hearing, Smith also presented evidence the washing machine was defective. Smith asserted the washing machine continues to spin when the door is open. Smith submitted a DVD showing the alleged washing machine defect. However, the DVD showed the washing machine continued to spin only after someone reached for the controls on the top of the machine, turned the

washing machine off, and opened its door. The DVD does not show the door to the machine would open with the power on. This leaves a reasonable question as to whether a child G.S.'s age and size could have climbed on the machine, turned it off, and then opened the door.

Furthermore, G.S.'s story about his injury consistently involved the washing machine, but it is not consistent regarding the fact that he accidentally injured himself. G.S. testified at the wrongful imprisonment hearing he thought he injured his arm in the washing machine. He stated Smith was upstairs and he was playing in the basement alone. Although G.S. was nonverbal at the time of the injury, a youth worker testified G.S.'s verbal skills had improved when G.S. was in a youth home and G.S. would say "arm" and "washing machine." The youth worker believed G.S. had been gesturing about the washing machine since he arrived at the youth home. However, the youth worker could not say whether G.S. was indicating he broke his arm in the washing machine or Smith put his arm in the washing machine. A separate employee from the youth home testified G.S.'s communications led him to believe G.S. caught his arm in the washing machine and broke it that way. However, the employee from the youth home also testified at one point G.S. said Smith put his arm in the washing machine.

There is also testimony G.S.'s father may have influenced G.S.'s testimony. The youth home supervised all phone calls to G.S. while G.S. was in the youth home. At some point, a supervisor began to monitor all phone calls between G.S. and G.S.'s father. Staff members and the supervisor believed the conversations were leading and G.S.'s father was trying to manipulate the staff members. The youth worker acknowledged G.S.'s father did not coach G.S. to say certain things, but G.S. would repeat things back to his father. The youth worker also stated she

believed G.S.'s father may have interpreted G.S.'s statements in a way G.S.'s father wanted them to be interpreted.

Smith's inconsistent statements, the medical testimony, the question as to whether G.S. could have manipulated the washing machine as displayed in the DVD, G.S.'s ambiguous statements as to how the injury occurred, and the potential coaching by G.S.'s father leaves serious or substantial doubts that any person, including Smith, did not commit the crime of child endangerment resulting in serious injury against G.S. Accordingly, we find substantial evidence supports the district court's finding Smith did not prove by clear and convincing evidence she did not commit or any person did not commit the crime of child endangerment resulting in serious injury.

## VI. Disposition.

Finding substantial evidence supports the district court's finding Smith did not establish by clear and convincing evidence neither she nor anyone else committed the crime of child endangerment resulting in serious injury, we affirm the decision of the court of appeals and the judgment of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**