# IN THE COURT OF APPEALS OF IOWA

No. 23-1107
Filed October 2, 2024

**STANLEY CHARLES HIGDON,**
     Plaintiff-Appellee,

**vs.**

**LEANNE P. RANA,**
     Defendant-Appellant,

**and**

**SHAWN A. RANA,**
     Defendant.

_____

     Appeal from the Iowa District Court for Des Moines County, John M. Wright, Judge.

     Leanne Rana appeals the judgment of the district court finding that she breached an express oral contract for improvements to her home. **AFFIRMED.**


     Richard A. Bartolomei of Bartolomei & Lange, P.L.C., Des Moines, for appellant.

     Richard L. Fehseke III of Fehseke & Gray Law Offices, Fort Madison, for appellee.


     Considered by Badding, P.J., and Langholz and Sandy, JJ.

**SANDY, Judge.**

After purchasing a home together in Burlington, Leanne and Shawn Rana approached general contractor Stanley Higdon to inquire whether he would be willing to perform renovations on their home. Higdon agreed to do so on a time and material basis. He completed a kitchen remodel and a garage addition. Yet the Ranas never paid Higdon in full for the work he performed. Higdon sued, asserting a breach-of-contract claim against Leanne and Shawn. Shawn failed to appear in this case or otherwise participate, and the district court entered a default judgment against him. The district court also found Leanne liable for breach of an express oral contract and entered judgment against her.

Leanne appeals the district court ruling, arguing (1) the district court erred by not finding Higdon to be an incompetent witness and (2) the evidence was insufficient to find her liable under an express oral contract.

After reviewing the record, we find (1) Leanne's competency argument was not preserved for appeal and (2) substantial evidence existed to support a finding that an express oral contract existed between she and Higdon. We therefore affirm the district court.

## I. Background Facts and Proceedings

The Ranas purchased a home together in Burlington in the fall of 2013. Shortly after purchasing the home, Shawn approached Higdon—an experienced general contractor—to inquire whether he would be willing to renovate the Ranas' home. This initial meeting between Shawn and Higdon was brief, but Higdon agreed to meet with Shawn and Leanne at their home to discuss the desired renovations.

At the meeting at the Ranas' home, Higdon walked through the home with Shawn and Leanne to visualize and discuss the renovations they wanted. Leanne and Shawn indicated they wanted the kitchen remodeled, some new doors for the home, and some other minor renovations to the interior of the home. According to Leanne, Shawn was interested in having the home's kitchen remodeled because he wanted a suitable space to host and entertain clients of his company. At the end of their meeting, Higdon discussed with the Ranas that he would perform the work on a time and materials basis under which he would be paid twenty-five dollars per hour for his labor. According to Higdon, Shawn and Leanne agreed to compensate him for the work to be done.

Shortly after meeting with the Ranas, Higdon began the work of remodeling their kitchen. According to Higdon, Shawn would do most of the talking and would communicate decisions regarding the work to be performed after he and Leanne had a chance to discuss things. Leanne was aware of the work Higdon performed in remodeling the kitchen and other renovations to the interior of the home. She enjoyed the remodeled kitchen and was satisfied with Higdon's work. And she understood Higdon did not perform the work gratuitously and expected to be paid. In fact, Leanne did pay Higdon for the work he performed in remodeling the kitchen. Leanne signed several checks made out to Higdon for nearly $200,000.

As the renovations to the kitchen and the interior of the home were nearing completion, Shawn approached Higdon with a request to add an additional garage to the home. Higdon agreed to add an additional garage to the home and later met with Leanne and Shawn to discuss the garage project. According to Higdon:

> before we started the[y] came out, and Mr. and Mrs. Rana were there. We laid out the positions for the garage, where it was gonna go, and they discussed among it themselves, exactly which directions they wanted it and how—how big they wanted it, and a couple times Mrs. Rana wanted to know if it's gonna be attached to the house or would there be a garage separately.

Higdon added that he discussed the garage project with Leanne "[a] couple different times" and that she expressed she wanted the additional garage to be attached to the house. Ultimately, the additional garage was attached to the house via a breezeway.

Leanne has a very different recollection of the garage project. Her testimony insinuated the garage project was done at the behest of Shawn and was intended to house his considerable collection of cars. Additionally, she testified she did not want an additional garage and received no benefit from it. According to her, she had no input on where the garage was to be built. As she explained in her testimony, the garage was built where it was because "[t]hat was where Shawn decided he wanted it to go."

After nearly two years of work, Higdon completed his services in late December of 2015. A few weeks later, Higdon drove to the Ranas' home and hand delivered a closing statement addressed to Leanne and Shawn showing an outstanding balance of $120,385.25. Leanne testified she was personally handed the closing statement by Higdon. Higdon stated at trial that Leanne did not object when he handed her the closing statement. Neither Shawn nor Leanne ever paid the outstanding balance owed to Higdon.[1]

---

[1] At the time, Shawn was employed as an executive at Iowa Fertilizer Company and earned a considerable salary. Leanne, at that time, worked as a stay-at-home mother with no source of outside income. At trial, Leanne testified Shawn had

Higdon then filed a mechanic's lien on the Ranas' home for the $120,385.25 outstanding balance owed to him in March 2016. Purportedly Leanne and Shawn were unaware of the mechanic's lien placed on their home. In a turn of events, Leanne and Shawn divorced in September 2017. As part of the dissolution decree, Leanne was awarded the home. Leanne then attempted to sell the home in October 2017. To clear title, Leanne negotiated a release of the mechanics lien in exchange for $80,000 from the proceeds of the sale. But in his release, Higdon never acknowledged that Leanne's payment satisfied the entire debt he was owed. Nor did Higdon waive his right to sue Leanne or Shawn for satisfaction of the debt.

Higdon then filed suit asserting claims of breach of an express oral contract, an implied contract, and unjust enrichment against Leanne and Shawn.[2] Higdon alleged Leanne and Shawn owed him an outstanding $40,385.25 for the work he performed on their home. Higdon filed a motion to compel Shawn's attendance at a deposition and the production of the requested documents. Such motion was granted. However, after Shawn failed to appear at his deposition or otherwise produce the requested documents, Higdon filed for sanctions. The district court granted the motion and entered default judgment against Shawn.

But Shawn appealed the district court's order granting sanctions, arguing that he was never personally served with the motion to compel as required by Iowa

complete control of the family's finances and that she had no independent means to possibly pay Higdon for his work.

[2] At trial, Higdon made a motion to orally amend his petition to include a claim under Iowa Code section 597.14 (2019), which provides that the "reasonable and necessary expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately." The motion was granted, but the district court never addressed such statutory claim in its ruling.

Rule Civil Procedure 1.517(1)(e). We agreed with Shawn's argument and reversed the sanctions imposed by the district court. *See Higdon v. Rana*, No. 20-0332, 2021 WL 1399760, at *2 (Iowa Ct. App. Apr. 14, 2021) (holding sanctions were improper because defendant was not personally served with motion to compel). However, Shawn's participation in this case was minimal after we reversed the sanctions imposed on him by the district court. And he failed to appear at trial. Discovery in this case was scant.

A bench trial was held in April of 2023. Leanne and Higdon were the only parties to appear. Additionally, they were the only witnesses who testified. In lieu of oral closing arguments, counsel for both parties submitted written closings. The district court issued its ruling in June. It found "the evidence best supports the theory that all parties hereto entered into a contract to remodel the home's kitchen, and then to build an attached garage." The district court did not address the alternative theories of recovery asserted by Higdon. The district court explicitly found Higdon's testimony—on the existence of a contract—to be more credible than Leanne's. Accordingly, the district court entered judgment against Leanne and Shawn in the amount of $40,385.25 plus interest.

Leanne now appeals, arguing (1) the district court erred by failing to find Higdon to be an incompetent witness and (2) the evidence was insufficient to establish Leanne's liability under an express oral contract.

## II. Standard of Review

"The standard of review for a breach of contract action is for correction of errors at law." *Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 110 (Iowa 2013). The district court's findings of fact are binding upon us if they are supported

by substantial evidence. *NevadaCare, Inc. v. Dep't of Hum. Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). Evidence is considered substantial if a reasonable mind would find it sufficient to reach the conclusion of the district court. *Smith v. State*, 845 N.W.2d 51, 54 (Iowa 2014). Evidence is not insubstantial simply because we would reach a different conclusion; rather, the ultimate question is whether the evidence supports the finding made. *Sahu v. Iowa Bd. of Med. Exam'rs*, 537 N.W.2d 674, 676–77 (Iowa 1995). We conduct this review in the light most favorable to the district court's ruling. *Chrysler Fin. Co. v. Bergstrom*, 703 N.W.2d 415, 418 (Iowa 2005).

A district court's evidentiary rulings are reviewed for an abuse of discretion. *State v. Williams*, 929 N.W.2d 621, 628 (Iowa 2019).

## III. Analysis

### A. Witness Competency

We begin our analysis with Leanne's first claim of error by the district court. Leanne contends that "[i]n failing to adequately address the role of Higdon's lack of recollection," the district court erred as a matter of law. Leanne notes Higdon testified repeatedly that he could not recall a specific date on which she agreed to be responsible for payment for his services. She argues Higdon only testified that he *believed* Leanne was present when he discussed the terms under which he would perform the work on the home.

Leanne also highlights that Higdon testified at least twenty-seven times that he could not recall specific details regarding the work he performed. Leanne contends Higdon's "[l]ack of recollection is not evidence at all, and Higdon's lack of recollection made him incompetent to testify to rebut [her] testimony that she

never agreed to pay for" the work done on the home. Because Leanne believes Higdon was an incompetent witness due to his failure to recall numerous details during his testimony, she contends she was the only witness with the capacity to testify, i.e., the only witness.

Leanne did not preserve error on this issue. Although Higdon does not contest error preservation, we may consider whether error has been properly preserved sua sponte. *See Top of Iowa Co-op v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("In view of the range of interests protected by our error preservation rules, this court will consider on appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal."). We conclude error was not preserved on the challenge to Higdon's competency as a witness for two reasons.

First, while Leanne did raise the issue of Higdon's competency as a witness to testify about the existence of a contact in her closing written argument, she never obtained a ruling on this issue. In an almost identical situation, we explicitly reiterated that error preservation "generally involves two steps: (1) properly raising the issue before the district court and (2) obtaining a ruling." *In re Est. of Laube*, No. 20-1399, 2022 WL 108937, at *5 (Iowa Ct. App. Jan. 12, 2022) (per curiam). When a party does not obtain a ruling on an issue raised in the district court, our case law is clear that a party must file a motion requesting a ruling in order to preserve error for appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (noting that a party must file a motion requesting a ruling with the district court when an issue was not ruled on by the district court to preserve error for

appeal). Leanne made no such motion. Thus, she has not preserved error on this issue.

Second, the proper time to challenge the competency of a witness is at the time the relevant party is presented as a witness. As the Fourth Circuit has succinctly stated:

> The general rule is that any objection to the competency of a witness should be raised at the time the party is presented as a witness and, absent objection at that time, any claim of competency of the witness is waived; and this is particularly so, if there is not a motion to strike at the conclusion of the witness' testimony.

*United States v. Odom*, 736 F.2d 104, 112 (4th Cir. 1984). Leanne never objected to Higdon's competency as a witness before or during his testimony. Leanne never moved to strike Higdon's testimony at any time prior to the close of evidence. For these reasons, we conclude Leanne has not preserved error on this issue for appeal.[3]

---

[3] Even if we were to consider the merits of Leanne's argument, she would not be successful in her claim. Iowa Rule of Evidence 5.601 states that "[e]very person is competent to be witness unless a statute or rule provides otherwise." And as our supreme court recently stated, "The basic premise behind Federal Rule 601 and presumably behind the most recent Iowa rule is that virtually all witnesses who possess relevant evidence should be allowed to present it to the jury and allow the jury to determine its probative value." *State v. Cahill*, 972 N.W.2d 19, 34 (Iowa 2022) (citation omitted). And as federal courts have recognized:

> [Federal] Rule [of Evidence] 601 . . . , which is the controlling guide in federal criminal courts on qualifications of witnesses, represents, in the words of the leading commentator on the Rules, the culmination of the modern trend which has converted questions of competency into questions credibility while steadily moving towards a realization that judicial determination of the question of whether a witness should be heard at all should be abrogated in favor of hearing the testimony for what its worth.

*Odom*, 736 F.2d at 112 (citation and quotation marks omitted).

Applying these principles, we cannot conclude Higdon was an incompetent witness simply because he could not recall some specific details regarding the alleged contract existing between him and Leanne. *See Cahill*, 972 N.W.2d at 34

### B. Pleading Alternative Theories of Recovery

Leanne next argues that the district court erred in its ruling because an express oral contract cannot co-exist with an implied contract. Leanne notes that Higdon pled an express contract claim and an implied contract claim. Leanne highlights that Iowa law has long held that an express contract cannot co-exist with an implied contract. Likewise, Leanne points out that Higdon also pleaded an unjust enrichment claim. She asserts that an unjust enrichment claim cannot be used to circumvent an express or implied contract.

Leanne is correct that an express and implied contract cannot coexist. *See Giese Constr. Co., Inc. v. Randa*, 524 N.W.2d 427, 431 (Iowa Ct. App. 1994) ("An express contract and an implied contract cannot coexist with respect to the same subject matter, and the law will not imply a contract where there is an express contract."). Similarly, our law recognizes that a theory of unjust enrichment may not be used to circumvent an express contract. *Kunde v. Est. of Bowman*, 920 N.W.2d 803, 808 (Iowa 2018) ("The existence of an express contract on these matters prevents [a party] from circumventing their agreement by seeking to use theories of unjust enrichment and quantum meruit to recover for improvements to which he was plainly not entitled under the terms of the contract.").

However, Iowa law also recognizes that a plaintiff may plead alternative theories of recovery. *See* Iowa R. Civ. P. 1.231 ("A single plaintiff may join in the same petition as many causes of action, legal or equitable, independent or

---

(noting the appellant could did not "cite a single reported Iowa case holding that inconsistencies in recollection or narrative are, by themselves, a ground for excluding a witness").

alternative, as there are against a single defendant."); *see also N/S Corp. v. Car Wash Consultants, Inc.*, No. 11-0174, 2012 WL 1439084, at *10 (Iowa Ct. App. Apr. 25, 2012) (noting Iowa courts have readily allowed alternative theories of recovery to be submitted to a district court). Additionally, we have addressed a similar challenge in the past and suggested that a party may plead both an express contract and implied contract simultaneously. *See Coppock v. Lustgraaf*, No. 09-0655, 2010 WL 2079676, at *5 n.1 (Iowa Ct. App. May 26, 2010) (noting that "since pleading in the alternative is permitted[,] [r]ecovery under [an] implied contract may be permitted, for example, where an express contract proves unenforceable").

The district court allowing litigation of multiple competing claims is different than the court granting simultaneous recovery on competing claims. Therefore, we reject any assignment of error to the district court simply because Higdon pleaded alternative theories of recovery.

### C. Existence of a Contract

The meat of Leanne's appeal—that a contract did not exist between herself and Higdon—fails. Leanne claims the evidence is insufficient to support the district court's conclusion that an express oral contract existed. She contends there is no evidence in the record demonstrating that she agreed to terms on a contract or agreed to be responsible for payment to Higdon. She contends there was never a "meeting of the minds" for either the kitchen remodeling or the garage project. Thus, she claims a contract cannot be found to exist because there was never mutual assent to the alleged agreement. She is wrong.

To establish a breach of contract claim, a plaintiff must prove: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that he or

she has performed all terms and conditions required under the contract; (4) the defendant breached the contract in some particular way; and (5) that he or she has suffered damages as a result of the defendant's breach. *Royal Indem. Co. v. Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010).

For a valid contract to exist, the parties must express mutual assent to the contract's terms. *Schaer v. Webster Cnty.*, 644 N.W.2d 327, 338 (Iowa 2002). Mutual assent exists when it is evident from the objective evidence that there has been a meeting of the minds. *Est. of Cox v. Dunakey & Klatt, P.C.*, 893 N.W.2d 295, 303 (Iowa 2017). In analyzing issues of mutual assent, we are to look to what the parties did and said, rather than to some secret, undisclosed intention. *Peak v. Adams*, 799 N.W.2d 535, 544 (Iowa 2011).

Under Iowa law, we have traditionally recognized two types of contracts— express and implied. *Irons v. Cmty. State Bank*, 461 N.W.2d 849, 854 (Iowa Ct. App. 1990). "When the parties manifest their agreement by words, the contract is said to be express." *Iowa Waste Sys., Inc. v. Buchanan Cnty.*, 617 N.W.2d 23, 29 (Iowa 2000) (citation omitted). When parties manifest their agreement through conduct, the contract is said to be implied. *Duhme v. Duhme*, 260 N.W.2d 415, 419 (Iowa 1977).

Applying these principles, we find substantial evidence exists to support the district court's finding that Leanne manifested her assent to an express oral contract with Higdon for the kitchen remodel and garage project. Leanne contends there is insufficient evidence to establish that she ever agreed to be bound by a contract with Higdon because Higdon, through his testimony, could not identify any specific date on which she expressed to be bounds by the terms he offered or

otherwise agreed to be financially responsible for payment. But this argument misses the mark for two reasons.

First, although Higdon testified that he could not recall a specific date on which Leanne agreed to be responsible for payment, he did testify that both Leanne and Shawn expressed to him that they would be responsible for payment. Not recalling the specific date when this occurred is different than the event not having occurred. Second—while mutual assent to an express oral contract is typically manifested by words—our supreme court has stated "[t]he existence of an agreement or meeting of the minds should not alone be determined from the words used by the parties, but also from the situation and surrounding circumstances and by the inferences which mankind would ordinarily and reasonably draw therefrom." *McCarter v. Uban*, 166 N.W.2d 910, 913 (Iowa 1969).

The district court reasonably found that the circumstances supported an inference that there was a meeting of the minds between Leanne and Higdon. Leanne testified that she was aware of Higdon performing improvements on her home for nearly two years. At no point did Leanne ever object to the work being performed. We have previously stated that such inaction can support an inference mutual assent was given. *See L&L Builders Co. v. Quirk*, No. 09-1311, 2010 WL 1052073, at *4 (Iowa Ct. App. Mar. 24, 2010) (noting a party's silence after the other party to the contract began performance was evidence of manifestation of assent). Further, Leanne never objected when Higdon hand delivered her closing statement[4] specifically addressed to her. Most importantly, Leanne herself made

---

[4] The invoice.

payments of nearly $200,000 to Higdon via checks she personally signed. Payment under the terms of an alleged contract is cogent evidence that a party has assented to the terms of a contract and agreed to be bound. *See Sullivan v. Porter*, 861 A.2d 625, 632 (Me. 2004) (noting a party's payment supported inference that a contract existed between the parties). We believe this undisputed evidence, coupled with Higdon's testimony that Leanne agreed to be responsible for payment, provides substantial evidence that there was a meeting of the minds between Leanne and Higdon.

Leanne contends she was not present when Higdon discussed the kitchen remodel and garage project with Shawn. She highlights that she never agreed to be responsible for payment. But these arguments ignore the fact that the district court found Higdon's testimony more credible on these points than Leanne's. And we readily defer to the district court's witness credibility determinations, especially when such determinations are factors in the outcome of a case. *See Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024) (noting appellate courts should defer to a district court's witness credibility determinations when they act as a factor in the outcome). We give such deference because the district court had a front-row seat to the live testimony, whereas we are limited to a cold record. *See id.* Thus, we defer to the district court's determination that Higdon's testimony was more credible than Leanne's.

We conclude substantial evidence exists to support the district court's finding that a meeting of the minds existed between Leanne and Higdon. Therefore, we conclude a contract existed between Leanne and Higdon and that Leanne breached that contract.

**IV. Conclusion**

Because we find substantial evidence exists to establish that a meeting of a minds occurred between Leanne and Higdon, we affirm the judgment of the district court.

**AFFIRMED.**